IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | | Case No. 3:19-cr-137 |
| v. | : | JUDGE WALTER H. RICE |
| CRAWFORD BOGLE, et al., | | |
| Defendants. | : | |

DECISION AND ENTRY VACATING JUNE 2, 2020, EVIDENTIARY
HEARING AND SETTING SUPPLEMENTAL BRIEFING SCHEDULE

In September of 2019, Crawford Bogle and more than a dozen other individuals were indicted on numerous drug trafficking charges, in violation of 21 U.S.C. §§841(a)(1) and 846, and charges of using a communication facility, *i.e.,* a cellular phone, to facilitate drug trafficking offenses, in violation of 21 U.S.C. §843(b).  Doc. #23.

This matter is currently before the Court on Crawford Bogle's Motion to Suppress Wiretap Intercepts, Doc. #198, and his Supplemental Motion to Suppress Evidence, Doc. #267.  Defendants Quentin Robinson and Jujuan Hansbro have,

also, each filed motions to suppress wiretap evidence and the fruits thereof, Docs. ##204, 205.[1]

Before reaching the merits of those motions, the Court must determine whether an evidentiary hearing is warranted.  An evidentiary hearing is currently scheduled for June 2, 2020.  However, for the reasons set forth below, the Court finds that no evidentiary hearing is needed with respect to the motions to suppress the wiretap intercepts.  Additionally, Bogle has failed to satisfy the requirements for a *Franks* hearing with respect to the GPS tracking warrant and the Riverside Drive warrant.  Accordingly, the Court vacates the evidentiary hearing, and will give the parties the opportunity to file supplemental briefs prior to determining the merits of Defendants' motions to suppress the wiretap intercepts and Bogle's Supplemental Motion to Suppress Evidence.

## I.    Background and Procedural History

In 2013, Crawford Bogle pled guilty to conspiracy with intent to distribute controlled substances and was sentenced to 70 months in prison.  He began a five-year term of supervised release on January 12, 2018.  In the fall of 2018, Drug Enforcement Agents launched an investigation after learning from a reliable confidential source that Bogle and others were distributing fentanyl and

---

[1]  Other Defendants have filed similar motions to suppress.  However, given their expressed intent to plead guilty, their motions will be rendered moot. *See* Docs. ##182, 192, 194, 196, 200, 201, 202, 208, 215.

methamphetamine in Dayton, Ohio. Numerous controlled buys were made by undercover agents and confidential informants. The following spring, Bogle and Pope delivered large amounts of US currency to undercover agents.

On May 3, 2019, DEA Special Agent Lauren Wagner was granted a warrant to install a GPS tracking device on a 2004 Chevrolet Silverado that was allegedly being used by Bogle in furtherance of narcotics trafficking and money laundering. Doc. #287-1. On May 22, 2019, DEA Special Agent Steve Lucas was granted a warrant to search 4492 Riverside Drive, Apartment B1, where agents found 901 grams of fentanyl and approximately one kilogram of methamphetamine. Doc. #287-2.

The investigation continued. On July 29, 2019, Special Agent Wagner was granted an order authorizing the interception of wire and electronic communications for cellular telephone number 937-610-8200, known to be used by Bogle. The warrant targeted eight interceptees. Case No. 3:19-mc-008. On September 4, 2019, the United States Attorney applied for an extension of the wiretap of Bogle's cellular phone, and for an order authorizing the interception of communications to and from 937-430-7802, known to be used by Defendant Savon Pope. This warrant identified additional interceptees. Case No. 3:19-mc-009.

On September 12, 2019, Bogle and eighteen others were indicted by the grand jury. Doc. #23. Arrest warrants were issued. On September 23, 2019, a

search warrant was issued for fourteen other properties, including 22 Siebenthaler Avenue and 4624 Laurel Avenue.  Doc. #287-3.

Defendants argue that all evidence obtained as a result of the wiretap intercepts, and all derivative evidence must be suppressed because the Government failed to show that the wiretaps were necessary.  Defendants have requested an evidentiary hearing on this issue.  Docs. ##198, 204, 205.  The Government has filed a response in opposition to Defendants' requests for a hearing.  Doc. #231.

In his Supplemental Motion to Suppress, Bogle also argues that all evidence obtained as a result of the GPS tracking warrant and the search warrants executed on Riverside Drive, Siebenthaler Avenue and Laurel Avenue must be suppressed because the warrants failed to establish probable cause.  Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), Bogle requests an evidentiary hearing in connection with the affidavits submitted in support of the GPS tracking warrant and the Riverside Drive warrant.  Doc. #267.  The Government has filed a response in opposition to Bogle's motion.  Doc. #287.

For the reasons explained below, the Court finds that no evidentiary hearing is warranted.  The Court will, however, reserve ruling on the merits of the motions until the parties have been given an opportunity to submit additional briefing, which shall be limited to the questions of: (1) whether the affidavits submitted in support of the wiretap warrants established the requisite necessity; and (2) whether the "four corners" of the affidavits submitted in support of the GPS

4

tracking warrant and the search warrants for Riverside Drive, Siebenthaler Avenue and Laurel Avenue were sufficient to establish probable cause, or whether the *Leon* good-faith exception applies.

II.     *Franks v. Delaware*

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that a defendant may challenge the truthfulness of statements included in an affidavit submitted in support of a warrant. An evidentiary hearing must be held at the defendant's request if the defendant makes a "substantial preliminary showing" that: (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth," was included in the warrant affidavit; [2] and (2) the defective statement is "necessary to the finding of probable cause." *Id.* at 155-56. Warrant affidavits are presumed to be valid, and allegations that they contain deliberately false or misleading statements or statements made with reckless disregard for the truth "must be accompanied by an offer of proof." *Id.* at 171. The defendant must identify the specific portions of the affidavit alleged to be defective and include a statement of supporting reasons. In addition, "[a]ffidavits or sworn or

---

[2]   A statement is made "with reckless disregard for the truth" when, viewing all the evidence, "the affiant in fact entertained serious doubts as to the truth of the affidavits or had obvious reasons to doubt the accuracy of the information contained therein." *United States v. Cican*, 63 F. App'x 832, 835-36 (6th Cir. 2003).

5

otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.*

If an evidentiary hearing is warranted and if, at that hearing, the defendant establishes the allegation of perjury or reckless disregard by a preponderance of the evidence "and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156.

## III. Motion to Suppress Wiretap Intercepts (Docs. ##198, 204, 205)

Defendants have requested an evidentiary hearing on their motions to suppress evidence obtained from the wiretap intercepts that occurred in connection with the warrants that were issued on July 29, 2019, and September 4, 2019.

The procedures for applying for an order authorizing interception of wire, oral, or electronic communications are set forth in 18 U.S.C. § 2518.  Given the intrusive nature of wiretapping compared to other investigative techniques, the Government must show that "normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(3)(c).

If the communication was unlawfully intercepted, or the order of authorization under which it was intercepted is insufficient on its face, or the

6

interception was not made in conformity with the order of authorization, an aggrieved person may move to suppress the contents of the communication. 18 U.S.C. § 2518(10)(a). If a violation is found, neither the contents of the communications nor evidence derived therefrom can be used at trial. 18 U.S.C. § 2515.

The Government properly notes that Defendants, in their motions to suppress, do not allege that the affidavits submitted in support of the wiretap applications contain any false statements or material omissions. Defendants simply argue that the facts alleged in the affidavits are insufficient to establish the requisite "necessity" under § 2518(3)(c).

Given the circumstances presented here, the Court agrees with the Government that there is no need for an evidentiary hearing. *United States v. Stewart*, 306 F.3d 295 (6th Cir. 2002), is instructive in this regard. In *Stewart*, the defendants moved to suppress the wiretap evidence and requested an evidentiary hearing. The district court denied the motion without a hearing.

On appeal, citing *Franks v. Delaware*, 438 U.S. at 155-56, defendants argued that the district court erred in denying their request for a hearing. The Sixth Circuit noted that defendants had not submitted any evidence that the affidavit submitted in support of the wiretap warrant contained any false statements or statements made with reckless disregard for the truth. Rather, defendants simply argued that the wiretap was not necessary given that other law enforcement techniques had been successful. *Stewart*, 308 F.3d at 305. The

7

Sixth Circuit concluded that, given the nature of defendants' arguments, the district court did not err in declining to hold a *Franks* hearing. *Id.* at 306.

This case is analogous to *Stewart.* Defendants do not allege that the affidavits contain any false statements or statements made with a reckless disregard as to their truth, or submit any evidence to support a substantial preliminary showing of the same. The relevant issue—whether the affidavits contained sufficient information to establish the requisite "necessity" for the wiretaps—may be resolved without an evidentiary hearing. *See also United States v. Heilman*, 377 F. App'x 157, 184 (3d Cir. 2010) ("We have never recognized a necessity hearing, separate from a *Franks* hearing, to assess whether a wiretap affidavit contained factual misstatements or omissions material to a necessity finding.").

Accordingly, the Court finds that Defendants have failed to establish that an evidentiary hearing on the motions to suppress the wiretap intercepts is warranted. The Court will reserve ruling on the merits of the motions until the parties have had the opportunity to submit additional briefing on the pending motions limited to the question of whether the "four corners" of the affidavits submitted in support of the wiretap warrants are sufficient to establish the requisite necessity under 18 U.S.C. § 2518(3)(c).

8

IV. Supplemental Motion to Suppress Evidence (Doc. #267)

As previously noted, Defendant Crawford Bogle has moved to suppress all evidence and statements derived from the execution of: (1) the GPS tracking warrant for the Silverado; (2) the search warrant for 4492 Riverside Drive; (3) the search warrant for 22 Siebenthaler Avenue; and (4) the search warrant for 4624 Laurel Avenue.

Bogle requests a *Franks* hearing with respect to the affidavits submitted in support of the GPS tracking warrant, Doc. #287-1, and the search warrant issued for 4492 Riverside Drive, Doc. #287-2. He maintains that these affidavits each contain a false statement or a statement made with reckless disregard for the truth, and that these statements are necessary for the probable cause finding. He has submitted no affidavits in support of his argument and attaches no offer of proof. With respect to the GPS tracking warrant, Bogle cites to a Dayton Drug Enforcement Investigation Report. Although Bogle failed to provide the Court with a copy of that document, the Government attached a copy to its response brief, Doc. #287-4.

For the reasons set forth below, the Court finds that Crawford Bogle has failed to make the requisite "substantial preliminary showing" required by *Franks.* Accordingly, the Court denies his request for an evidentiary hearing.

A. GPS Tracking Warrant

In paragraph 6 of her affidavit in support of the GPS tracking warrant for the Silverado, Special Agent Lauren Wagner stated as follows: "In fall of 2018,

9

members of the Dayton Police Department conducted several purchases of small quantities of narcotics, with the utilization of a confidential source, *from BOGLE*." Doc. #287-1, PageID#1271 (emphasis added).  Bogle contends that this is the only statement in the affidavit that links him to a *specific* sale of narcotics.  He denies that the confidential informant purchased narcotics "from" him, and argues that Wagner's statement was made with a reckless disregard for the truth.

Bogle submits no affidavits in support of this argument.  He cites only to facts contained in a Dayton Drug Enforcement Investigation Report, Doc. #287-4, PageID##1377-79.  That report indicates that agents used a confidential informant to purchase narcotics on five dates in the fall of 2018.  Each time, the confidential informant spoke to an unidentified individual via telephone, and then engaged in a hand-to-hand drug transaction, also with an unidentified individual.  Although the telephone number used by the confidential informant for each of the transactions was registered to Bogle, the confidential informant never identified Bogle as the person he or she spoke to on the phone, or as the person who delivered the narcotics.  Moreover, the confidential informant's physical descriptions of the individuals who did deliver the narcotics on some of those occasions do not match Bogle's physical description.

Bogle maintains that Agent Wagner's omission of these facts from her affidavit represents an effort to mislead the judicial officer, or at least a reckless disregard of the fact that such omissions could be misleading.

10

The Court finds that Bogle has not made a substantial preliminary showing that Agent Wagner's statement—that the confidential informant purchased narcotics "from Bogle"—was false or made with reckless disregard for the truth. Notably, the investigative report also indicates that, in September of 2018, a confidential informant told agents that "Project Pat," who drove a white Chevy SUV, and used the phone number 937-610-8200, was selling crack cocaine at 21 Valleyview Drive. Agents knew that this phone number was registered to Crawford Bogle, and that Bogle drove a White Chevy Tahoe, which was observed at the Valleyview address. In addition, the confidential informant was able to identify a photograph of Crawford Bogle as the drug dealer known as "Project Pat." Doc. #287-4, PageID##1377-79.

Regardless of whether Bogle personally answered the phone calls or personally delivered the drugs, the fact remains that, as Bogle himself concedes, the cell phone number used by the confidential source to initiate the drug transactions was registered to Bogle. Moreover, the confidential informant knew Bogle as "Project Pat" and knew that he was selling drugs from the house on Valleyview Drive. In addition, agents observed the SUV, which was registered to Bogle, at that address. Viewing the investigative report as a whole, it can reasonably be inferred that Bogle was, in fact, the person behind each of the drug transactions.

Bogle has failed to make a substantial preliminary showing that Agent Wagner's statement was knowingly false or was made with reckless disregard for

11

the truth. Moreover, even if Bogle had made a such a showing, he has failed to make a substantial preliminary showing that this statement was necessary to a finding that probable cause existed to issue a tracking warrant for the Silverado.

Agent Wagner's affidavit indicates that she was aware that Bogle had a prior drug trafficking conviction, was currently on supervised release, and was distributing fentanyl and methamphetamine in Dayton. The affidavit further indicates that Bogle was observed in April of 2019, driving to a designated meeting location in the Chevy Silverado, exiting the vehicle, and placing a plastic bag containing approximately $30,000 in cash into a trash can to be picked up by an undercover police detective. Bogle was also observed in the Silverado on numerous other occasions. Agent Wagner stated that, based on her training and experience, drug traffickers often generate large amounts of cash, and that vehicles are often used to conceal, transport and distribute narcotics and the cash proceeds. She averred that, based on the foregoing, probable cause exists to believe that Bogle is using the Silverado for illegal drug trafficking, and that tracking the movement of this vehicle could lead to information about his associates and locations where controlled substances or drug proceeds may be sold or stored. Doc. #287-1, PageID##1271-73.

Viewing Agent Wagner's affidavit as a whole, the Court finds that Bogle has not made a substantial preliminary showing that the statement at issue—that the confidential informant purchased drugs "from Bogle"—was necessary to a

12

finding of probable cause. Given the foregoing, Bogle is not entitled to a *Franks* hearing in connection with the GPS tracking warrant.

### B. Riverside Drive Warrant

Paragraph 4 of "Facts Supporting Probable Cause" portion of the affidavit submitted by Special Agent Steve Lucas in support of the search warrant for 4492 Riverside Drive, Apartment B1, reads as follows:

> In January 2019, the DEA Dayton Office seized a suspicious FedEx package sent from Dayton to Arizona. (It should be noted that, during the aforementioned debriefing of CS-1, CS-1 reported that CS-1 had overheard POPE discuss a source of supply for methamphetamine in Arizona). The package, which was opened pursuant to a search warrant, contained $25,000 in US Currency. *The cell phone number associated with the package was later linked to a second cellular telephone number—namely, 937-610-8200. As detailed below, 937-610-8200 is commonly used by BOGLE.* Based on my training and experience, the information from CS-1, as well as the links between the cellular telephone numbers, I believe that this money represented drug proceeds BOGLE intended to send to his source of supply in Arizona.

Doc. #287-2, PageID##1281-82 (emphasis added).

Bogle argues that the italicized statement implies that there was a direct link between his phone number and the phone number associated with the package of currency. In fact, the only "link" is that a *third party* exchanged calls, on the same day, with both the caller whose number was associated with the package and with Bogle. Bogle suggests that is was false and misleading for Agent Lucas to imply that there was a direct link.

Assuming *arguendo* that this constitutes a substantial preliminary showing that Agent Lucas knowingly and intentionally made a false statement, or made this

13

statement with a reckless disregard for the truth, Bogle has still failed to make a substantial preliminary showing that this statement was necessary for a finding of probable cause to search the Riverside Apartment.

Agent Lucas's affidavit indicates that, as early as the fall of 2018, he learned from a reliable confidential source that Savon Pope, Crawford Bogle, Quentin Robinson and Storm Otey were working together to distribute large quantities of fentanyl and other narcotics in Dayton. Lucas knew that Bogle had a prior conviction for drug trafficking and was on supervised release. He also knew that Robinson and Otey had prior drug trafficking convictions. Doc. #287-2, PageID#1281.

In addition to the January, 2019, delivery of $25,000 in cash detailed in paragraph 4 of the affidavit, Lucas stated that, in February of 2019, agents made controlled purchases of methamphetamine from Otey, who had been in contact with cell phones belonging to Bogle and Pope. Also in February of 2019, Bogle rented a vehicle that was used to deliver one pound of methamphetamine to a person from Kentucky. *Id.* at PageID##1282-83. In March of 2019, Pope used drug proceeds to purchase a vehicle from another known drug trafficker, and used that vehicle to deliver over $100,000 in US currency to an undercover agent. *Id.*

In April of 2019, a cooperating source was asked by a Mexican-based drug trafficking organization to collect $30,000 in drug proceeds from Dayton and drive them to Arizona. The cooperating source was given Bogle's cell phone number as the contact number in Dayton. An undercover agent set up the controlled delivery,

14

met with Bogle and took receipt of the cash. Bogle then drove to 4494 Riverside Drive and entered the apartment building. Bogle had been observed there before. A utility subpoena was used to identify a tenant whose cell phone was in frequent contact with Bogle's cell phone. Agent Lucas stated that he believed that Bogle was using this tenant's apartment to store drugs and drug proceeds. *Id.* at PageID##1283-84.

Later in April of 2019, immediately after Pope arranged for Robinson to deliver over $100,000 in drug proceeds to an undercover agent, the agent gave Robinson a device containing a court-authorized GPS. Robinson was to give that device to Pope. The device then appeared to travel to the same Riverside Drive apartment. Based on this information, Agent Lucas stated that he believed that Pope also had access to that apartment. *Id.* at PageID#1285. In May of 2019, a reliable source who worked for Bogle told agents that the Riverside Drive apartment was used by Bogle to store drugs and firearms. On May 20, 2019, agents observed Bogle and one of his associates engage in a suspected hand-to-hand transaction at the Riverside Drive apartment complex. *Id.* at PageID##1285-86.

Based on the foregoing, the Court finds that Bogle has not made a substantial preliminary showing that the statement at issue—implying that there was a direct link between Bogle's cell phone and the cell phone of the individual who sent the package of currency from Arizona—was necessary to a finding of probable cause to believe that evidence of drug trafficking crimes would be found

15

at the Riverside Drive apartment. Accordingly, the Court concludes that Bogle is not entitled to a *Franks* hearing in connection with the Riverside Drive search warrant.

III. Conclusion

For the reasons set forth above, the Court concludes that an evidentiary hearing is not warranted in connection with Defendants' motions to suppress wiretap intercepts, Docs. ##198, 204, 205. Neither has Defendant Crawford Bogle made a showing sufficient to warrant a *Franks* hearing on his Supplemental Motion to Suppress Evidence, Doc. #267. Accordingly, the Court VACATES the evidentiary hearing currently scheduled for June 2, 2020.

All matters addressed in Defendants' motions to suppress the wiretap intercepts and in Bogle's Supplemental Motion to Suppress Evidence will be decided on the briefs. Twenty-one (21) days from the date of this Decision and Entry, the parties shall submit supplemental briefs, which shall be limited to the questions of: (1) whether the affidavits submitted in support of the wiretap warrants established the requisite necessity; and (2) whether the "four corners" of the affidavits submitted in support of the GPS tracking warrant and the search warrants for Riverside Drive, Siebenthaler Avenue and Laurel Avenue were sufficient to establish probable cause, or whether the *Leon* good-faith exception

16

applies.³ Simultaneous response briefs shall be submitted 14 days after the supplemental briefs are filed.

Date: May 26, 2020

*/s/ Walter H. Rice*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

³ The Court notes that these issues have already been briefed fairly extensively. There is no need for the parties to make any duplicative arguments.