IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | | |
| v. | : | Case No. 3:19-cr-137(1) |
| CRAWFORD P. BOGLE, | | JUDGE WALTER H. RICE |
| Defendant. | : | |

DECISION AND ENTRY OVERRULING DEFENDANT CRAWFORD P. BOGLE'S SECOND SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE (DOC. #553)

Defendant Crawford P. Bogle and several others were indicted on multiple drug-related charges. Bogle's trial is scheduled to begin on May 10, 2021. This matter is currently before the Court on Bogle's Second Supplemental Motion to Suppress Evidence, Doc. #553. He asks the Court to suppress all evidence obtained as the result of the September 26, 2019, search at 21 Valley View Drive, Apartment A, Dayton, Ohio.

The Court held an evidentiary hearing on Bogle's motion on April 28, 2021. Special Agent Steve Lucas, of the Drug Enforcement Administration ("DEA"), who applied for the search warrant, and Task Force Officer Jason Barnes, who executed the search warrant, both testified at the hearing.

I.  **Factual Background**

On September 23, 2019, DEA Special Agent Steve Lucas applied for a search warrant for numerous properties, including "Target Residence 2," described in Attachment B to the warrant application as "21 Valley View Drive, Apartment A, Dayton, Ohio, including any outbuildings and curtilage at this location." Attachment B included a picture of the exterior of the apartment building. Two staircases were visible in the picture. The photo description indicated that the door to the target residence was located "where the man in shorts is standing" in the photograph. Attachment B also included a photograph of the mailbox immediately outside the entry door of the target location, and noted that the mailbox had the letters "AA" on it. Govt. Ex. 2.

At the hearing, Agent Lucas testified that 21 Valley View Drive is a multi-unit building. Stairways lead from the sidewalk to two separate entryways into the building. Def. Ex. D. Lucas further testified that, despite the double letters on the mailbox outside the entry door where Bogle was observed on multiple occasions, there is no "Apartment AA" located at 21 Valley View Drive. Neither Dayton Power and Light ("DP&L), nor the City of Dayton has any record of such a location. Lucas also noted that Bogle had contacted DP&L to obtain service for "Apartment A."[1] Lucas speculated that the mailbox was labeled "AA" in order to thwart law enforcement.

---

[1] In his motion, Bogle argues that, although the search warrant was for "Apartment A," officers instead searched "Apartment AA." He further argues that

Lucas's warrant affidavit indicated that, based on surveillance, and court-authorized interceptions of telephone conversations, he believed that Bogle used Target Residence 2 as a stash house for large-scale drug trafficking operations. Magistrate Judge Sharon Ovington issued the requested warrant on September 23, 2019, for "21 Valley View Drive, Apartment A, Dayton, Ohio." A copy of Attachment B to the warrant application was attached to the warrant itself. Govt. Ex. 1. The affidavit does not indicate that 21 Valley View Drive is a multi-unit building.

The search warrant was executed on September 26, 2019. Task Force Officer Jason Barnes participated in the execution of that warrant. He testified that officers entered the building through the locked entryway depicted in Attachment B, next to the mailbox marked "AA." Govt. Ex. 3. This locked entry door opens from the outside into a small enclosed area, approximately 5' x 7.' Two more locked doors are accessible from this small area. Govt. Ex. 4. Neither door bears any distinctive markings. The living area for Apartment A is behind the door on the right. Govt. Exs. 7 and 8. A stairway leading down to an unfinished basement is behind the door on the left. Govt. Ex. 10. It was secured only with a deadbolt.

Agents first breached the door leading to the living area, and then the door leading to the basement. Officer Barnes testified that there was no other entrance

---

Units A and AA are adjacent to each other, but consist of two separate, non-adjoining units. There is no evidence in the record to support such an assertion.

3

to the basement, either from the living area of Apartment A, or from other units in the building. Photographs of the basement show at least two water heaters, four gas meters, five air handling units and five electric meters. Two glass tables, an upholstered chair and a toilet are also visible in the photographs. Govt. Exs. 12 and 13.

Officers located contraband in the living area of Apartment A, and in the basement. Bogle has filed a Second Supplemental Motion to Suppress Evidence in which he asks the Court to suppress all evidence obtained as a result of this search. Doc. #553.

II. Analysis

In his motion to suppress, Bogle argues that the search warrant, which authorized a search of "Apartment A," was unconstitutional in that it failed to particularly describe the place to be searched. He also argues that, even if the incorrect address was not fatal to the search that ensued, officers unreasonably exceeded the scope of the warrant by searching the basement of the multi-unit building.

The Government argues that Bogle has failed to establish a legitimate expectation of privacy in the apartment at 21 Valley View Drive, and therefore lacks standing to challenge the search. It further argues that the warrant sufficiently described the place to be searched, and that the search of the basement did not exceed the scope of the warrant. In the alternative, it argues

that the *Leon* good-faith exception applies. Finally, the Government argues that, because Bogle was on supervised release when the search was executed, the search, even if otherwise defective, was proper under either *United States v. Knights*, 534 U.S. 112 (2001), or *Griffin v. Wisconsin*, 483 U.S. 868 (1987).

The Court turns first to the threshold question of whether Bogle has standing to challenge the search of 21 Valley View, Apartment A, including the living area and the basement.

### A.  Standing to Challenge Search

In his warrant affidavit, Agent Lucas stated that Bogle's primary residence is located at 22 E. Siebenthaler Avenue, in Dayton. Lucas further stated that Bogle used 21 Valley View, Apartment A, as a stash house for drug trafficking activity. He noted that Bogle was observed there on multiple occasions. This, however, is not enough to confer standing to challenge the search.

In *Shamaeizadeh v. Cunigan*, 338 F.3d 535 (6th Cir. 2003), the Sixth Circuit held that, unless an individual has a reasonable expectation of privacy in the area that is the subject of the search, he lacks standing to assert a Fourth Amendment violation. *Id.* at 544. The Court must consider whether that individual "manifest[ed] a subjective expectation of privacy in the premises searched" and "whether society is prepared to recognize that expectation as legitimate." *Id.* (internal quotation omitted). The individual seeking to suppress the evidence bears the burden of establishing standing to challenge the search. *Id.*

5

There is no question that Bogle manifested a subjective expectation of privacy in the living area and the basement of Apartment A, given that he stored controlled substances in both locations. The question is whether his expectation of privacy is one that society is prepared to recognize as legitimate.

Factors to be considered in determining whether someone has a reasonable expectation of privacy include:

> the person's proprietary or possessory interest in the place to be searched or item to be seized . . . . whether the defendant has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises.

*Id.* at 544-45 (quoting *United States v. King*, 227 F.3d 732, 744 (6th Cir. 2000).

There is no evidence in the record that Bogle owns 21 Valley View Drive, Apartment A. Likewise, there is no evidence in the record that Bogle leases the apartment from someone else, or that he occupies the living area or the basement area of Apartment A. Nevertheless, Agent Lucas testified that Bogle was observed at this property on multiple occasions and contacted DP&L about establishing electric service to Apartment A. It can be inferred that Bogle therefore had some possessory interest in the living area of the apartment. It can also be inferred that he had the right to exclude others from the living area, which was accessible only by passing through two locked doors. In the Court's view, Bogle had a reasonable expectation of privacy in the living area of Apartment A, and has standing to challenge the search of that area.

It is not clear, however, whether Bogle had the right to exclude others from the basement area. He argues that basement area "is clearly a joint area, housing utilities for all units, and includes storage." Doc. #561, PageID#3144. This area, located behind the locked exterior door next to the mailbox marked "AA," was not accessible to the general public. However, there is no evidence concerning whether other tenants in the building also had a key to that exterior door, thereby giving them access to the basement. The mere fact that utility meters, water heaters and air handling units for all of the units in the building were located in the basement does not mean that other tenants had, or needed, access to that area. Moreover, there is no evidence that any other tenants stored their belongings in the basement.

In any event, given that Bogle appears to be the tenant of Apartment A, and that the basement is accessible only after first unlocking the exterior door to that apartment, the Court finds that Bogle also had a legitimate expectation of privacy in the basement area, and has standing to challenge the constitutionality of its search.

### B. Did the warrant particularly describe the place to be searched?

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. "[A] search conducted pursuant to a warrant that fails to conform to

7

the particularity requirement of the Fourth Amendment is unconstitutional." *Mass. v. Sheppard*, 468 U.S. 981, 988 n.5 (1984).

Nevertheless, "while it is clearly preferable that a warrant be as accurate and specific as possible," the Sixth Circuit "does not require perfection." *United States v. Wagoner*, 836 F. App'x 374, 378 (6th Cir. 2020). In deciding whether a warrant satisfies the particularity requirement, the Court must consider "(1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched." *United States v. Gahagan*, 865 F.2d 1490, 1497 (6th Cir. 1989).

A defect in the warrant itself may be cured by a description of the property included in an affidavit attached to the warrant and specifically incorporated therein. *Id.* In addition, personal knowledge of the officers executing the warrant may also cure insufficiencies in the warrant's description of the premises and reduce the likelihood that the wrong property will be searched. *See United States v. Brown*, 49 F.3d 1162, 1169 (6th Cir. 1995); *United States v. Abdalla*, 972 F.3d 838, 846-47 (6th Cir. 2020); *United States v. Bucio-Cabrales*, 635 F. App'x 324, 332-33 (6th Cir. 2016) (given that the agents who executed the warrant had both surveilled Defendant's residence in the past, there was no danger that they would search the wrong location).

The search warrant in this case authorizes a search of "21 Valley View Drive, Apartment A." Agent Lucas testified that, based on ongoing surveillance and court-authorized interceptions of phone calls, there was probable cause to believe that contraband would be found at this location. A pole camera was mounted nearby and Bogle was observed entering and exiting this apartment on numerous occasions. Lucas further testified that, even though the mailbox outside the entry door is labeled "AA," there is no "Apartment AA" at 21 Valley View Drive.

To combat any confusion, Agent Lucas included, in his affidavit and the warrant application, photographs identifying the "door to the residence." He also attached a photograph of the "mailbox on the target location," specifically noting that the mailbox is labeled "AA." These descriptions and photographs were also attached to the search warrant itself.

Agent Lucas did not participate in the execution of the warrant, but he conducted the briefing of the officers who did. Those officers were given copies of the warrant, along with the photographs of the entryway and the mailbox. These officers drove by the location the night before they executed the search warrant. None expressed any confusion as to which apartment was the subject of the search warrant. In fact, Task Force Officer Jason Barnes testified that he took no steps to determine if there was also a mailbox with "A" on it because the photographs attached to the warrant clearly showed the entryway to the property to be searched.

Based on the evidence presented, the Court finds that the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort. Given the descriptions of the property and the two accompanying photographs, the Court further finds that there is no reasonable probability that some other premises would be mistakenly searched. The Court concludes that the warrant satisfies the particularity requirement of the Fourth Amendment.

### C. Did the search of basement exceed the scope of the warrant?

Bogle further argues that the search of the basement of Apartment AA, which is part of a small, multi-unit complex, exceeded the scope of the warrant.[2] The Sixth Circuit has held that, when a "structure is divided into more than one unit, probable cause must exist for each unit that is searched." *United States v. Gonzalez*, 697 F.2d 155, 156 (6th Cir. 1983). Accordingly, "searching two or more apartments in the same building is no different than searching two or more completely separate houses." *United States v. Shamaeizadeh*, 80 F.3d 1131, 1137 (6th Cir. 1996) (quotation omitted).

The relevant question is whether, under the circumstances presented here, the basement should be deemed sufficiently separate from the living area of Apartment A, such that the search of the basement should be considered a warrantless search. Bogle claims that the basement was not part of Apartment A,

---

[2] As previously discussed, according to records from DP&L and the City of Dayton, there is no record of an "Apartment AA" located at 21 Valley View Drive.

10

and argues that officers exceeded the scope of the warrant by breaching the locked door to the basement.

In support of his motion, Bogle relies heavily on the Sixth Circuit's decision in *United States v. King*, 227 F.3d 732 (6th Cir. 2000), in which the court held that the defendant had a legitimate expectation of privacy in the basement of the two-family, two-and-a-half story house where he lived with other family members, and that officers exceeded the scope of the warrant when they searched that basement. The court concluded that the cocaine found in the basement should have been suppressed as fruit of the poisonous tree.

The search warrant in *King*, however, authorized a search of the "premises, curtilage, containers, and persons therein," only of the "downstairs unit" of the house where Defendant Kenneth King lived with his brother Kewin. Their mother lived on the second floor with her two daughters and another son. Another teenage son lived on the third floor.

The basement of the house was accessible from a common hallway, which could be accessed through the kitchen door in the downstairs unit and from the upstairs of the house, or through a back door off a small porch on the side of the house. The basement itself was an unpartitioned area containing a washer and dryer used by everyone in the house, and three unlocked storage rooms. However, at the time the search warrant was executed, the officer did not know that Defendant and his family members used the entire house as one unit.

The court noted that the warrant authorized a search only of the "downstairs unit" of the house. The court concluded that the officer's actions in searching the basement were not reasonable. The basement, which was not immediately accessible from the downstairs unit, was not a "common" area for purposes of being included within the parameters of the warrant, "and the nature of the location of the basement in this two-unit dwelling should have put the agents on notice that the search warrant did not include this area." *Id.* at 751.

Bogle argues that, as in *King*, there was no direct access from the living area of Apartment A to the basement. Rather, the basement was accessible only by exiting the living area into a hallway and entering a separate, locked door.

The Government, however, argues that Bogle's case is factually distinguishable from *King.* The Court agrees. Whereas the search warrant in *King* was limited to the "downstairs unit" of the house, the search warrant in Bogle's case was for the entirety of "Apartment A." The Government maintains that "Apartment A" consists of everything beyond the locked entryway door next to the mailbox marked "AA," including: (1) the small area inside the entryway; (2) the living area which was behind one unmarked door to the right; and (3) the basement which was behind the other unmarked door to the left. The Government maintains that everything behind the doorway leading from the outside was "one solitary unit" and fell within the scope of the search warrant.

Under the circumstances presented here, the Court agrees with the Government that it cannot be said that the officers unreasonably exceeded the

12

scope of the warrant. This is particularly true given that the only defining marking was on the mailbox outside of the entryway door, and that neither the door leading to the living area nor the door leading to the basement had any markings indicating that they were not both part of the same apartment.

### D. *Leon* Good-Faith Exception

Even if the Court were to find that the search warrant was defective because it failed to satisfy the particularity requirement of the Fourth Amendment, or that the officers exceeded the scope of the warrant by searching the basement, the Court would find that the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984) applies. Exclusion of evidence is not warranted "when the police act with an objectively reasonable good faith belief that their conduct is lawful." *Davis v. United States*, 564 U.S. 229, 238-39 (2011).

Given Agent Lucas's briefing, and the photographs and descriptions of the property to be searched, as set forth in Attachment B to the warrant, the executing officers reasonably relied on the warrant in conducting a search of Apartment A, even though the mailbox outside of the entryway was labeled "AA."

Likewise, the Court finds that it was objectively reasonable for the executing officers to extend the search to the basement area. Bogle argues that, after the officers breached the door to the living area, it should have been obvious to them that they had reached the target of the warrant and stopped the search there,

without also breaching the door leading to the basement.[3] Nevertheless, there is no evidence that the officers had any idea what lied behind the second door. It could have been a coat closet, or storage closet accessible only to the tenants of Apartment A, rather than the "shared basement" that Bogle claims is was.

Given that the doors to the living area of Apartment A and to the basement were both located behind the locked entryway to the apartment marked "AA," and there were no other markings on the interior doors suggesting that the areas behind those doors were not both part of that apartment, the officers had an objectively reasonable belief that the basement was part of the "one solitary unit" that comprised Apartment A. Moreover, although the basement contained utility meters and air handlers for multiple units, there is no evidence indicating that other tenants in the building had any access to that area. There is no evidence that they had individual storage areas in the basement. In short, nothing that the officers observed would have given them reason to believe that the basement area fell outside the scope of the search warrant.

Accordingly, even if the search exceeded the scope of the warrant, the officers' conduct was objectively reasonable. [4]

---

[3] Bogle admits, however, that if the officers had breached the door to the basement before breaching the door to the living area, any contraband located in plain sight may have been admissible.

[4] Given the Court's above findings, there is no need to reach the Government's alternative argument that, because Bogle was on supervised release at the time the search warrant was executed, the search was reasonable even if the warrant was faulty. *See United States v. Knights*, 534 U.S. 112, 118-19 ((2001) (holding that

III. Conclusion

For the reasons set forth above, the Court OVERRULES Defendant Crawford P. Bogle's Second Supplemental Motion to Suppress Evidence, Doc. #553.

Date: April 30, 2021

*Walter H. Rice* (tp - per Judge Rice authorization after his review)
WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

officers may conduct a warrantless search of the property of an individual on post-release control so long as the search is reasonable under the totality of the circumstances), and *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (holding that, under the "special needs doctrine," a probation officer may, under certain circumstances, conduct a warrantless search of a probationer's home).