# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

                Plaintiff,      :      Case No. 3:19-cr-137
                                                  Civil Case No. 3:24-cv-00104

                                                  District Judge Walter H. Rice
     -  vs  -                            Magistrate Judge Michael R. Merz

CRAWFORD P. BOGLE,

                Defendant.      :

## REPORT AND RECOMMENDATIONS

This criminal case is before the Court on Defendant's Motion to Vacate, brought *pro se* under 28 U.S.C. § 2255 (ECF No. 736). That Motion was referred to the undersigned by District Judge Walter Rice (ECF No. 738). Upon Order to do so (ECF No. 739), the United States has answered the Motion (ECF No. 764). Defendant's deadline for filing a reply, as extended, was October 20, 2024 (ECF No. 769). As of the date of this Report, October 31, 2024, he has not filed a reply.

**Litigation History**

Defendant was indicted September 12, 2019, with eighteen co-defendants and named in Counts 1, 2, 4, 5, 9, 15-25, 27(Indictment, ECF No. 23) for conspiring to distribute drugs. He eventually reached a plea agreement (ECF No. 565) with the United States under which he pleaded

1

guilty to Count 9 of the Second Superseding Indictment, a substantive count of possessing controlled substances of a given amount with the intent to distribute, and was sentenced to 216 months, to be served consecutively to the 24 month sentence imposed on revocation of supervised release in Case No. 3:13cr105 (Amended Judgment, ECF No. 626).  Bogle appealed and his conviction was affirmed by the Sixth Circuit.  *United States v. Bogle*, 2023 WL 110722 (6th Cir. Jan. 5, 2023), unpublished; copy at ECF No. 116).  Bogle did not appeal tom the Supreme Court, but filed the instant Motion to Vacate April 5, 2024 (ECF No. 736).  District Judge Rice then referred to § 2255 Motion to the undersigned who ordered the United States to Answer the Motion (ECF No. 739).  The United States filed an Answer (ECF No. 764) and the undersigned notified Defendant his reply was due September 16, 2024 (ECF No. 765).  That time has been extended twice on Defendant's Motion, but no reply has been filed.  The Magistrate Judge accordingly proceeds with this Report without any reply by Defendant.

## Analysis

**Ground One:**  Counsel rendered ineffective assistance in advising me on the offer made by the Government prior to the "best case" conference.

**Supporting Facts:**  Prior to the November 13, 2020 "best case-worst case" conference Counsel was fully aware of the government's plea offer proposal. Without instructions to do so she informed the government that I was not going to accept it.  Thereafter on November 12, 2020, in a video conference with Counsel she failed to advise me of the strengths and weaknesses of the Government's case against me, the likely sentence I would face if I rejected the plea offer, and the merits of an F. R. Crim. P. 1l(c)(l)(C) plea that capped my sentence exposure regardless of my Guidelines sentencing range.

2

>**Ground Two**: Counsel rendered ineffective assistance by abandoning me after the "best case" conference and letting the Government's offer lapse.
>
>**Supporting Facts:** After the "best case-worst case" conference Counsel was aware that I was interested in obtaining further advice from her in order to make a knowing voluntary and intelligent decision on accepting the Government's plea offer. While she knew that I was uninterested in a cooperation agreement she also knew that I was focused on the likelihood that the government had a strong case, and that the plea agreement it offered might provide sentencing benefit over going to trial or waiting for a later offer. Counsel had a basic obligation - especially given my inability to communicate because of being in detention and the COVID-19 pandemic - to communicate with me before the plea agreement offer was withdrawn or overtaken by events. Counsel's failure to speak to me by phone or video prevented my accepting the plea offer.

(Motion, ECF No. 736, PageID 4380-81).

The governing standard for ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

>A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v.*

4

> *Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

The constitutional right to the effective assistance of counsel extends to the plea bargaining process and includes the duty of an attorney to communicate an offered plea bargain. *Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012).

During a Best Case/Worst Case hearing[1] on November 13, 2020, the United States confirmed a plea offer it had made earlier to have Bogle plead guilty to Count One or Count Four "with an agreed sentence in the range of 144 months (12 years) to 204 months (17 years) imprisonment; the parties further would stipulate to an advisory Guidelines range of 160 months to 210 months." (Answer, ECF No. 764, citing Transcript, ECF No. 755, PageID 4485). In the best case scenario, there was to be no enhancement under the Guidelines for Bogle's leadership role. The Assistant United States Attorney confirmed that this would be a Fed. R. Crim. P. 11(c)(1)(c) plea which he understood the Court would reject in accordance with its usual practice. *Id.* The worst case scenario would result in a thirty-year to life sentence upon conviction after trial. *Id.* at PageID 4486.

---

[1] Sometimes referred to as a *Lafler* hearing because one of the principal purposes is to ensure a defense attorney has conveyed a plea offer, as required by *Lafler, supra.*

5

A break in the hearing was held to allow Bogle to consult with his attorney. Ms. Bowling reports that during that conference Bogle again rejected the offered plea as he had in his discussion with counsel the day before and asked why he could not receive an offer of around five years. Bowling Declaration[2], ¶ 5. Ms. Bowling advised Bogle that the Government's offer was reasonable and that the strength of it case meant it would probably win at trial, exposing Bogle to the worst case scenario at sentencing. She advised him to accept the offer, but he again rejected it. *Id.* at ¶¶ 4-5. He also rejected the possibility of cooperating with the United States in order to get a better offer.

Back on the record, Bogle asked to speak to the United States Attorney directly regarding a possible five-year deal. Judge Rice allowed that further off-the-record conversation in which Bogle was told that cooperation was the only possible route to that range of sentence and he again rejected that proposal (Transcript, ECF No. 455, PageID 4489-90).

After the Second Superseding Indictment was handed down with a count that had a mandatory minimum sentence of only five years, Government's counsel expressed optimism about restarting plea negotiations. Bogle, however, insisted that Attorney Bowling file a new motion to suppress which she did. The Court held a prompt hearing and denied the motion such that the May 2021 trial date could be kept. After the suppression ruling, Bogle indicated he was willing to plead, but on the date set for a change of plea hearing and the final pretrial conference, Bogle changed his mind again, rejected the Government's most recent plea offer, and wanted to again negotiate directly with the United States Attorney. He did not request the Government to reinstate

---

[2] Attached to the Government's Answer. Because Bogle had pleaded ineffective assistance of trial counsel, the Magistrate Judge held he had waived attorney-client communication privilege, freeing Ms. Bowling to make this Declaration.

6

its original offer and the Government refused to accede to his request for a fixed five-year sentence. Bowling Declaration, ¶ 8.

Bogle then agreed to the Government's last offer and maintained that agreement after a plea colloquy with Judge Rice. Both in the Plea Agreement and orally during the colloquy, Bogle confirmed he was satisfied with Attorney Bowling's representation (Transcript, ECF No. 680, PageID 3917, 3934). Judge Rice also confirmed Bogle knew the judge did not have to accept the plea agreement.

At sentencing, Judge Rice imposed a sentence at the top of the agreed sentencing range and indicated that if Bogle had been convicted at trial, the sentence would have been higher. He imposed an additional consecutive twenty-four month sentence for Bogle's violation of supervised release in a prior case, No. 3:13-cr-105.

As noted above, there are two prongs to the *Strickland* ineffective assistance of trial counsel standard. A federal defendant must show deficient performance and resulting prejudice.

Defense counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors. *Strickland, supra,* at 690; *Maryland v. Kulbicki*, 577 U.S. 1 (2015); *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997). Bogle's argument for deficient performance seems to be that Attorney Bowling did not spend enough time with him on the telephone:[3] he attaches telephone call logs to his Motion. But he provides absolutely no detail as to how her performance was deficient. He does not state what it was that Attorney Bowling did not tell him that she should have about the plea offers. He certainly does not accuse her of providing misinformation.

Bogle does criticize her for allowing the original plea to "lapse," but that is not what happened. The record shows Bogle rejected that offer and the Government was under no duty to

---

[3] Much of the representation occurred during the COVID 19 pandemic when in-person meetings were impossible.

7

reinstate it.  Plea agreements are contractual in nature and are therefore interpreted and enforced in accordance with traditional contract law principles.  *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).  The United States, the same as any other offeror of a contract, is not bound to keep it open for any particular time.  Indeed, as Respondent notes, rejection of an offer terminates the offer (Opposition, ECF No. 764, PageID 4542, citing Williston on Contracts § 5.2 (4th ed. 2006).

Nor has Bogle shown any prejudice.  Judge Rice made it cleat at sentencing that he evaluated Bogle's behavior very critically and would have imposed a higher sentence if Bogle had been convicted after trial.  Bogle has shown no likelihood that the Government would have made a better offer if Attorney Bowling had done something different.

This case can be decided without an evidentiary hearing.  Such a hearing is required when there is a dispute of material facts.  *Paprocki v. Foltz,* 869 F.2d 281, 287 (6th Cir.1989). Conversely, no hearing is required when the material facts are not in dispute. *United States v. Sammons*, 2024 WL 4614665 (S.D. Ohio Oct. 30, 2024)(Morrison, Ch. J.), citing *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999).  In particular, Bogle has failed to contradict Attorney Bowling's Declaration with sworn testimony.

**Conclusion**

Defendant Bogle has shown neither deficient performance nor resulting prejudice from Attorney Bowling's performance.  Therefore it is respectfully recommended that the Motion to Vacate be denied without an evidentiary hearing.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Defendant be denied a certificate of appealability

and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

November 1, 2024.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

#