## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

|                        |   |                                      |
|------------------------|---|--------------------------------------|
| Plaintiff,             | : | Case No. 3:19-cr-137                 |
|                        |   | Civil Case No. 3:24-cv-00104         |
|                        |   |                                      |
|                        |   | District Judge Walter H. Rice        |
| -  vs  -               |   | Magistrate Judge Michael R. Merz     |

CRAWFORD P. BOGLE,

              Defendant.       :

---

## SUBSTITUTED REPORT AND RECOMMENDATIONS

---

This criminal case is before the Court on Defendant's Motion to Vacate, brought *pro se* under 28 U.S.C. § 2255 (the "Motion," ECF No. 736). That Motion was referred to the undersigned by District Judge Walter H. Rice (ECF No. 738). On October 31, 2024, the undersigned filed a Report and Recommendations recommending the Motion be denied without an evidentiary hearing (ECF No. 771). Bogle has objected (ECF No. 776) and Judge Rice has recommitted the Motion for reconsideration in light of the Objections (ECF No. 777). For ease of decision, the Magistrate Judge substitutes this Report for the original and deals herein with the Objections.

Despite several extensions of time to do so, Defendant never filed a reply in support of his § 2255 Motion (See ECF Nos. 766-67, 768-69). Now, however, he has filed extensive objections to the Report, largely focused on the recommendation that the § 2255 Motion be denied without

an evidentiary hearing.  At the Court's direction, the United States has now responded to Defendant's Objections (ECF No. 784).

**Litigation History**

Defendant was indicted September 12, 2019, with eighteen co-defendants and named in Counts 1, 2, 4, 5, 9, 15-25, 27(Indictment, ECF No. 23) for conspiring to distribute drugs. He eventually reached a plea agreement (ECF No. 565) with the United States under which he pleaded guilty to Count 9 of the Second Superseding Indictment, a substantive count of possessing controlled substances of a given amount with the intent to distribute, and was sentenced to 216 months imprisonment, to be served consecutively to the 24 month sentence imposed on revocation of supervised release in Case No. 3:13cr105 (Amended Judgment, ECF No. 626).  Bogle appealed and his conviction was affirmed by the Sixth Circuit. *United States v. Bogle*, 2023 WL 110722 (6th Cir. Jan. 5, 2023), unpublished; copy at ECF No. 116).  Bogle did not appeal to the Supreme Court, but filed the instant Motion to Vacate April 5, 2024 (ECF No. 736), which was the very last day of the limitations period enacted in 28 U.S.C. § 2255(f).

Judge Rice referred the Motion to Vacate to the undersigned for report and recommendations (ECF No. 738).  The United States was ordered to answer and the Court in the same Order set a reply date of twenty-one days after the Answer was filed (ECF No. 739, PageID 4427).  Defendant twice requested and received extensions of that date, but has never filed a reply.

The purpose of an evidentiary hearing in a § 2255 proceeding is to allow the Court to decide the credibility of competing witnesses on material questions of fact.

# Analysis

Defendant pleads the following Grounds for Relief:

> **Ground One:** Counsel rendered ineffective assistance in advising me on the offer made by the Government prior to the "best case" conference.
>
> **Supporting Facts:** Prior to the November 13, 2020 "best case-worst case" conference Counsel was fully aware of the government's plea offer proposal. Without instructions to do so she informed the government that I was not going to accept it. Thereafter on November 12, 2020, in a video conference with Counsel she failed to advise me of the strengths and weaknesses of the Government's case against me, the likely sentence I would face if I rejected the plea offer, and the merits of an F. R. Crim. P. 1l(c)(l)(C) plea that capped my sentence exposure regardless of my Guidelines sentencing range.
>
> **Ground Two:** Counsel rendered ineffective assistance by abandoning me after the "best case" conference and letting the Government's offer lapse.
>
> **Supporting Facts:** After the "best case-worst case" conference Counsel was aware that I was interested in obtaining further advice from her in order to make a knowing voluntary and intelligent decision on accepting the Government's plea offer. While she knew that I was uninterested in a cooperation agreement she also knew that I was focused on the likelihood that the government had a strong case, and that the plea agreement it offered might provide a sentencing benefit over going to trial or waiting for a later offer. Counsel had a basic obligation - especially given my inability to communicate because of being in detention and the COVID-19 pandemic – to communicate with me before the plea agreement offer was withdrawn or overtaken by events. Counsel's failure to speak to me by phone or video prevented my accepting the plea offer.

(Motion, ECF No. 736, PageID 4380-81). The Motion to Vacate was signed under penalty of

perjury, so the Court takes the statement of facts therein as equivalent to an affidavit.

Because Defendant's claims assert ineffective assistance of trial counsel, the Court found

he had waived the privilege for communications with his trial attorney, Kathryn Bowling (Order,

ECF No. 739, PageID 4427). Relying on that waiver, the United States sought and received a

Declaration under Penalty of Perjury from Attorney Bowling (ECF No. 764-1).

Attorney Bowling avers that she was retained by Bogle and he

> wanted me to pursue various motions to suppress evidence against
> him before exploring any type of plea negotiations. For the majority
> of my representation of him, Mr. Bogle seemed generally reticent to
> plea negotiations -particularly to any plea that would involve either
> a ten-year mandatory minimum sentence or his cooperation with the
> government.
>
> 3. The Court ultimately denied Mr. Bogie's various motions to
> suppress. Around that time, the government orally conveyed
> proposed parameters of a plea offer to me. The proposal involved
> Mr. Bogle pleading to Count One of the indictment, which carried a
> mandatory minimum penalty of 10 years; the United States further
> proposed a binding sentencing range of 12 years to either 16 or 17
> years. Given the pending trial date, the United States advised that it
> intended to request a best case/worst case scenario with the Court to
> confirm Mr. Bogie's response to the offer.
>
> 4. Prior to the hearing, I met with Mr. Bogle and conveyed the plea
> offer to him. Based on our earlier conversations in the case, I knew
> that he did not want to plead to a 10-year mandatory minimum. Mr.
> Bogle was consistently adamant that he would not enter a plea that
> involved a floor of "double digits." I nevertheless explained my view
> of the government's case: namely, that, given the denial of the
> suppression motions, the evidence against him was strong, and he
> likely would be convicted at trial. I advised him of the penalties and
> Guidelines that he likely would face if convicted at trial - which
> were far higher than then tendered plea offer. I explained to him that
> the best path to a better plea offer was through cooperation. Mr.
> Bogle reaffirmed that he did not want to cooperate and that he would
> not accept the government's offer given the sentencing floor of 12
> years. Despite my efforts to explain the evidence to him, he insisted
> that the government could not prove its case and that he would

4

receive a better offer closer to trial. I relayed to him that I did not believe it was in his best interest to count on a better plea offer coming on the doorstep of trial.

5. During November 2020, the Court held the best case/worst case scenario via GoToMeeting pursuant to COVID protocols. Except for some confusion concerning the cap on the government['s] offer, Mr. Bogle confirmed on the record that I had discussed the offer with him as well as the likely post-plea penalties. At Mr. Bogie's request, the Court provided him a chance to speak with me of[f] the record. Our conversation generally tracked our discussion from the preceding day. Mr. Bogle indicated that he wanted to speak to the prosecutor directly – a request to which I acquiesced. The Court provided the parties -Mr. Bogle, the prosecutor, and me - an opportunity to speak off the record. During this exchange, Mr. Bogle indicated that he would not accept the plea and wanted a better offer. I believe that he questioned why he could not receive an offer around five years. The prosecutor explained that the government's case strong and that a better offer required cooperation. Mr. Bogle advised that he was not interested in that option. The conversation ended with my clear understanding that Mr. Bogle had rejected the plea offer. His directive to me was that he wanted to take this case to trial.

6. As the trial date approached, Mr. Bogle was generally disinterested in plea negotiations and became increasingly insistent that I file a new round of suppression motions. He was counseled regarding my opinion on the likelihood of success on the new suppression motion. Around this time, the government superseded the indictment, adding additional charges including a possession with intent to distribute count that carried a mandatory minimum penalty of five years. The government suggested that it would be open to Mr. Bogle['s] pleading to that charge, reducing the sentencing floor from 10 years to 5 years of imprisonment. The government indicated that, in exchange for lowering the floor, it would increase the proposed binding cap from 17 to 18 years. While I raised these parameters with Mr. Bogle and indicated that they accommodated some of his concerns, he directed me either to file a new motion to suppress or withdraw from the case. Consistent with

his instructions, I filed a new motion to suppress. After a hearing, the Court denied the motion.

7. After this denial, I again discussed the new plea offer with Mr. Bogle, once more emphasizing the strength of the government's case. He agreed to accept the plea. When the day of the plea hearing/final pretrial conference arrived, Mr. Bogle notified me that he had a change of heart and that he again wanted to speak directly with the prosecutor. I, along with the prosecutor, met with Mr. Bogle. Mr. Bogle indicated to the Prosecutor, "now is when we negotiate" or something to that effect. The prosecutor advised that the current proposal represented the government's best and final offer. Mr. Bogle finally agreed to accept this plea.

8. Notably, during my various discussions with Mr. Bogle, I do not recall him ever requesting that the government reinstate its original plea offer of 12 to 16 or 17 years. Given his insistence that he would not plead to a charge carrying a ten year floor, I would not have expected him to have done so. Throughout our discussions, he consistently instructed that he was going to "take it to trial" in response to any plea discussion that involved a ten year floor. Throughout my representation, I advised Mr. Bogle concerning the strength of the government's case and the likely penalties he faced if convicted at trial. Mr. Bogle understood these risks, and his rejection of plea agreements appeared a tactic to extract a better offer from the government.

(Declaration, ECF No. 764-1).

As noted above, Defendant never filed a reply or in any other way provided any contradiction under oath of Attorney Bowling's Declaration after it was filed. The Magistrate Judge proceeded to file the original Report and Recommendation on the basis of the record as it then stood, recommending denial of the Motion to Vacate without an evidentiary hearing (Report, ECF No. 771). Bogle responded with nine objections which are dealt with seriatim below.

**First Objection**. The Report states that in the Best Case/Worst Case Scenario hearing, the Assistant United States Attorney said he understood the plea deal on offer at that time was under

Fed. R. Crim P. 11(C)(1)(c) and that the Court **would** reject it. Bogle points out this was a typographical error and what Mr. Tabacchi actually said was the Court **could** reject it. Upon reviewing the transcript, the Magistrate Judge finds that what the Judge Rice said and Bogle heard in that hearing was that the Court **could** reject the plea (Transcript, ECF No. 755, PageID 4485, line 24). This typographical error, for which the Magistrate Judge apologizes, has no impact on the ultimate recommendation.

**Second Objection.** There is a contradiction in material fact between the statements of fact in Bogle's Motion and Attorney Bowling's Declaration on whether she advised him of the strength of the Government's case. Bogle asserts that this contradiction can only be resolved by holding an evidentiary hearing (Objections, ECF No. 776, PageID 4572, citing *Legg v. United States*, 350 F.2d 945, 946 (6th Cir. 1965)[1], and *Machibroda v. United States*, 368 U.S. 487 (1962)).

*Legg* was decided several years after *Machibroda* and distinguished that authority, rejecting a claim that an evidentiary hearing was required in Legg's case. Importantly, the circuit court noted: "the current popularity of the type of petition presently before us [a § 2255 petition] would be reduced if District Judges would in all cases make careful inquiry of any accused offering to plead guilty whether any promises or assurances of leniency had been made." 350 F. 2d at 946-47.

Careful conduct of plea proceedings can indeed reduce the need for evidentiary hearings on § 2255 motions and it does in this case. This case was set for the taking of Bogle's plea pursuant to a new plea offer on May 5, 2021, the Wednesday before trial was to start the following Monday on the Second Superseding Indictment (Transcript, ECF No. 680). When the proceedings commenced at 2:10 p.m., even though they had been convened for taking the plea, Attorney

---

[1] *Legg* was argued for the United States by U.S. Attorney Joseph Kinneary, later a judge of this Court.

Bowling was uncertain whether Bogle had changed his mind. *Id.* at PageID 3891. However when the proceeding were resumed at 2:32 p.m., Bogle had apparently made up his mind.

At the very beginning of the plea colloquy, Judge Rice swore Bogle to answer all the Court's questions truthfully and completely. *Id.* at PageID 3895-96. Judge Rice warned Bogle he could be prosecuted for perjury "if it turns out that what you've told us today is not true." *Id.* at PageID 3897.

As part of the plea colloquy, Judge Rice asked Bogle "To the extent that you're able to tell, are you satisfied with the advice and the legal services that Ms. Bowling has given you?" to which Bogle answered "yes." *Id.* at PageID 3917. At the time he gave that answer under oath, Bogle knew all of the facts on which he relies in his Motion to Vacate. In particular he knew the facts on which he relies to claim Attorney Bowling abandoned him. He also knew how much she had or had not discussed the strength of the Government's case or the different sorts of guilty pleas allowed by Fed. R. Crim. P. 11.

To the extent Bogle now claims he was dissatisfied with Attorney Bowling's representation before he pleaded guilty, he lied to the Court when he said under oath that he was satisfied at that time. He does not now plead any facts which would not have been known to him at the time of the guilty plea. Presumably if the Court held an evidentiary hearing, Bogle would now testify under oath to the facts as pleaded in his Motion to Vacate. But why should the Court find him credible now when what he pleads in the Motion contradicts what he has already told the Court under oath a the plea colloquy? Because Bogle is bound by his statements under oath at the plea colloquy, there is no need for an evidentiary hearing to resolve his Motion to Vacate.

**Third Objection.**  The Report found that during an off-the-record conversation between

Bogle and Attorney Bowling during the Best Case/Worst Case hearing:

> Bogle again rejected the offered plea as he had in his discussion with
> counsel the day before and asked why he could not receive an offer
> of around five years. Ms. Bowling advised Bogle that the
> Government's offer was reasonable and that the strength of it[s] case
> meant it would probably win at trial, exposing Bogle to the worst
> case scenario at sentencing. She advised him to accept the offer, but
> he again rejected it. He also rejected the possibility of cooperating
> with the United States in order to get a better offer.

Bogle objects that this finding is not supported by the transcript reference given

(Objections, ECF No. 776, PageID 4573).  The undersigned agrees.  Rather, the findings are

supported by Attorney Bowling's Declaration, as the Report's citations to the Declaration show.

Bogle's Motion does not contradict Attorney Bowling on these averments and he has not filed a

reply with any contradiction.

**Fourth Objection:**  Bogle complains that the Report "completely ignores my complaint

that I retained the option of accepting the Government's plea offer even after the conclusion of the

Best Case/Worst Case hearing."  (Objections, ECF No. 776, PageID 4573).  This Objection is

without merit.  Bogle points to no place in the record where he purported to retain the right to

accept the first plea offer having failed to accept it during the hearing, nor does he claim he made

a statement to that effect to Attorney Bowling off the record.  Nor does he point to any place in

the record where the United States Attorney said the offer would remain open.

Plea agreements are contractual in nature.  In interpreting and enforcing them, federal

courts are to use traditional principles of contract law. *Baker v. United States,* 781 F.2d 85, 90 (6th

Cir.), *cert. denied,* 479 U.S. 1017 (1986).  As a matter of contract law, an offer made and not

accepted is deemed rejected as a matter of law. Bogle does not claim that he asked that the offer be kept open or that either the United States Attorney or Attorney Bowling told him it would remain open.

**Fifth Objection.** The Report found that Bogle knew Judge Rice could reject the plea agreement. Bogle agrees with that finding, but says the Report implies he knew the difference between a plea under Fed. R. Crim. P. 11(C)(1)(c) and one under Rule 11(C)(1)(a). The Report makes no such implication. A district judge can reject any offered plea agreement.

**Sixth Objection**. Bogle objects to what he says is a conclusion in the Report that Judge Rice would not have accepted a plea agreement embodying the government's 11(C)(1)(c) sentencing range as discussed at the Best Case/Worst Case hearing (Objections, ECF No. 776, PageID 4576). The Report does not reach that conclusion and no implication to that effect is intended.

**Seventh Objection**. In his Seventh Objection, Bogle claims that the record does not show the Government withdrew the first plea offer before the First Superseding Indictment was handed down. He cites general contract law authority for the proposition that offers are construed to remain open for a reasonable period." (Objections, ECF No. 776, PageID 4576-77, citing *International Graphics, Div. of Moore Business Forms, Inc. v. United States*, 4 CL Ct. 515,520, 31 Cont. Cas. Fed. (CCH) P72,227; Restatement Of Contracts (Second)§ 41 (1981); and J. Calamari and J. Perillo, Contracts 56 (1970)). As a general proposition, that is true. But he cites no authority for the more particular proposition for which he contends, to wit, that an unaccepted

plea offer in a felony case remains open even though, at a defendant's direction, his attorney files a new round of motions to suppress and the Government continues to prepare for trial. Bogle never told anyone in the court system, on or off the record, that he considered the first plea offer remained open until he made that claim in his Motion to Vacate.

**Eighth Objection.** Bogle objects that the Report makes no finding on his claim Attorney Bowling "abandoned" him after the Best Case/Worst Case Scenario hearing. The Magistrate Judge finds no such "abandonment." The docket shows extensive activity in this multi-defendant case between the referenced hearing and the handing down of the First Superseding Indictment. See, e.g., Third Motion to Suppress (ECF No. 553), filed the same day as the Second Superseding Indictment. The claim of abandonment is additionally unpersuasive because Attorney Bowling was retained and as far as the record shows, Bogle made no effort to replace her.

**Ninth Objection**. Bogle objects to the Report's conclusion that "[i]n particular, Bogle has failed to contradict Attorney Bowling's declaration was sworn testimony." (Objections, ECF No. 776, PageID 4577). Bogle points out that he signed his Motion to Vacate under the penalty of perjury. That is correct. What the Report intended to note is that Bogle provided no sworn testimony **after** Attorney Bowling filed her Declaration and in response to it. That of course remains true. Bogle has never filed a reply in which he could have responded to the Declaration, despite taking several extensions of time to do so.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge adheres to the conclusion offered in the original Report: the Motion to Vacate should be denied with prejudice and without an evidentiary hearing. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Defendant be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

January 17, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.