# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

|  |  |  |  |
|---|---|---|---|
| | Plaintiff, | : | Case No. 3:19-cr-00137 |
| | | | Civil Case No. 3:24-cv-00104 |
| | | | |
| | | | District Judge Walter H. Rice |
| | | | Magistrate Judge Michael R. Merz |
| | | | |
| CRAWFORD BOGLE, | | | |
| | | | |
| | Defendant. | : | |

---

# REPORT AND RECOMMENDATIONS

---

This is a proceeding under 28 U.S.C. § 2255 in which Defendant seeks relief from his conviction in this Court of conspiracy to possess with intent to distribute forty grams or more of a mixture containing fentanyl (Amended Motion, ECF No. 799). The United States opposes the Motion (ECF No. 808) and Defendant has filed a Reply in support (ECF No. 818). Having determined that an evidentiary hearing was warranted (ECF No. 824), the Court appointed Attorney Lawrence J. Greger as counsel for Defendant (ECF No. 827) and Attorney Greger continues to represent Defendant in these proceedings.

An evidentiary hearing was held on December 2, 2025 (Minute Entry for that date). The proceedings have been transcribed (ECF No. 852) and the parties have filed post-hearing briefs (ECF Nos. 856, 864, 866, and 867), rendering the § 2255 proceedings ripe for Magistrate Judge recommendation.

1

**Litigation History**

On September 12, 2019, the grand jury for this District handed down an indictment charging Defendant Bogle and eighteen others in seventeen counts of controlled substances violations (Indictment, ECF No. 23). The case was assigned to District Judge Walter H. Rice who has continued to be the assigned District Judge throughout the case. At the initial appearance, Magistrate Judge Sharon Ovington appointed CJA panelist James Fleisher as counsel for Bogle (Minute Entry, 09/27/2019). On the Government's motion, Bogle was detained pre-trial (ECF No. 100). On January 23, 2020, Attorney Kate Bowling requested, at Bogle's request, permission to consult with him (ECF No. 186). On February 20, 2020, Attorney Bowling entered her appearance as retained counsel for Bogle, substituting for Mr. Fleisher (ECF No. 212).

On April 2, 2020, Attorney Bowling supplemented Bogle's pending motion to suppress (ECF No. 267). That motion was overruled on November 3, 2020 (ECF No. 446). The Best Case/Worst Case Hearing in this case was held November 13, 2020, with Defendant appearing remotely because of the COVID-19 Pandemic. A transcript of that hearing has been filed at ECF No. 755. Assistant United States Attorney Brent Tabacchi represented on behalf of the United States that if Bogle were convicted as charged, he would face a sentence of a mandatory minimum of ten years up to life imprisonment. *Id.* at PageID 4483. AUSA Tabacchi estimated Bogle's Sentencing Guideline range if convicted on all charges would be an offense level of forty-two and a criminal history category of III, resulting in a Guideline Range of thirty years to life imprisonment. *Id.* at PageID 4484. As to a best case, AUSA Tabacchi stated:

> The plea offer that has been extended to Mr. Bogle would involve a
> plea to either Count 1, which is the conspiracy count, or alternatively

2

> to Count 4, which is possession with intent to distribute the 500 grams or more of methamphetamine or 400 grams of fentanyl. Based on that plea to one of those two counts, Mr. Bogle would confront a Base Offense Level of 32.  Under 2D1(a)(5) and (c)(4) for 3,000 to 10,000 kilograms of converted drug weight. A 2-level upward or specific offense characteristic for possession of a deadly weapon. Another 2-level enhancement for maintaining a drug premises. Minus 3 points under 3E1.1 for acceptance of responsibility and timely notice for a total adjusted offense level of 33.  With a Criminal History category of III, the guidelines would recommend an advisory range of 160 to 210 months or 14 years to 17 years, 6 months. The government's proposal at this point would be a proposed binding sentencing range of 12 years to 17 years, or 144 months to 204 months of imprisonment.

*Id.* at PageID 4884-85.  Judge Rice noted that this would involve no upward adjustment for a leadership role and AUSA Tabacchi agreed. *Id.* at PageID 4885.

Bogle neither accepted nor rejected the plea offer during the hearing; he was not expected to do so.  Bogle claims Attorney Bowling rejected the plea offer without authorization from him. Attorney Bowling, on the other hand, claims she told AUSA Tabacchi she believed it was likely Bogle would reject the plea because it did not comport with his desired outcome:  a binding plea agreement with a minimum in single digits.

However the Court came to learn that Bogle had not accepted the Government's plea offer, and on December 10, 2020, the Court re-set the jury trial for January 2021 (ECF No. 482).  Neither a trial nor a plea conference occurred on that date.  On December 29, 2020, the trial was re-set for April 26, 2021 (Minute Entry).  Again on April 14, 2021, the Court set a hearing on the motion to suppress and a new trial date of May 10, 2021 (Minute Entry).  Meanwhile Attorney Bowling continued to litigate the Motion to Suppress (Reply filed 04/29/2021, ECF No. 561) which Judge Rice overruled the next day (ECF No. 562).

At the request of Judge Rice, the Government filed on February 9, 2021, a statement of its position as to the roles in the charged conspiracy of various Defendants.  As to Bogle, the United States stated Bogle acted as the "central nexus and prime mover of the conspiracy alleged in the indictment."  (ECF No. 511, PageID 2849).  The grand jury handed down a Superseding Indictment on March 9, 2021 (ECF No. 520).  On April 2, 2021, Bogle's trial was set for May 3, 2021.  Attorney Bowling then filed another motion to suppress (ECF No. 553) and the grand jury then handed down a Second Superseding Indictment (ECF No. 555).

On May 5, 2021, Bogle appeared to enter a guilty plea to the Government's latest plea offer, a guilty plea to Count Nine of the Second Superseding Indictment (Minute Entry, ECF No. 567).  Judge Rice accepted the guilty plea but postponed acceptance or rejection of the Plea Agreement until review of the Presentence Investigation Report. *Id.* Those proceedings have been transcribed (Transcript, ECF No. 680).  The first part of these proceedings occurred without Bogle present.  Judge Rice indicated he had been advised Bogle had agreed to a plea, but Attorney Bowling indicated he had not yet made up his mind.  AUSA Tabacchi stated:

> the government and Ms. Bowling have worked repeatedly to try to work this case out. Mr. Bogle's answer has been no throughout, which is fine. It's his right. I think we thought that we had parameters worked out that from the government's perspective accommodated one of Mr. Bogle's concerns but at the same time without doing violence to the Plea Agreement the government had negotiated with other defendants in the case.
>
> So when Ms. Bowling advised me this afternoon there may be a change of heart, we actually went down and, both of us, to talk with Mr. Bogle to cut out the middleman. At least from the government's perspective, he is now at the 11th hour trying to engage in plea discussions that perhaps he should have 8, 9 months ago. Again, this may be self-serving from the government's perspective. He seems to be trying to game things.

4

(Transcript, ECF No. 680, PageID 3892).

When the Court reconvened, Bogle was present, was sworn, and stated he knew he could be prosecuted for perjury if he lied *Id.* at PageID 3896-97. He agreed Ms. Bowling had told him everything Judge Rice had just stated about the plea. *Id.* at PageID 3898. Bogle agreed orally that he was satisfied with the legal advice Attorney Bowling had given him. *Id.* at PageID 3917. Judge Rice then conducted a very thorough plea colloquy and AUSA Tabacchi read the Plea Agreement into the record, including the provision that "he [Bogle] is fully satisfied with the representation, advice and other assistance of his attorney in this case." *Id.* at PageID 3934. After further ensuring the plea was knowing, intelligent, and voluntary, Judge Rice asked Bogle for his plea, to which he answered "Guilty, sir." *Id.* at PageID 3940.

The next day the Plea Agreement was filed (ECF No. 565). In that document Bogle agreed to plead guilty to Count 9, possession with intent to distribute forty grams or more of a fentanyl mixture, an offense carrying a mandatory minimum of five years imprisonment with a maximum of forty years (¶¶ 1-2). Bogle indicated he understood that a collateral consequence of his guilty plea could be a finding of violation of the terms of his supervised release in Case No. 3:13-cr-105 which was also assigned to Judge Rice. *Id.* at ¶ 4. The Agreement notes that it is pursuant to Fed. R. Crim. P. 11(c)(1)(C) and that the parties have agreed an appropriate sentencing range is sixty to 216 months (five to eighteen years). *Id.* at ¶ 7(b)(1). Bogle signed the Agreement immediately below a representation that he was completely satisfied with the representation he had received from Attorney Bowling (PageID 3177).

On August 5, 2021, Judge Rice accepted the Plea Agreement and sentenced Bogle to eighteen years imprisonment (Judgment Entry, ECF No. 621). The judgment was amended to

make the time run consecutive to twenty-four months imposed on revocation of Bogle's supervised release in the prior case (ECF No. 626).

Attorney Bowling then filed a Notice of Appeal on Bogle's behalf (ECF No. 639). On January 5, 2023, the Sixth Circuit affirmed this Court's judgment (ECF No.716). It found Bogle had waived his right to appeal denial of his suppression motions, the only issue raised on appeal. It noted

> As part of the change of plea hearing, the district court asked Bogle if he understood his guilty plea waived his ability to appeal the earlier suppression rulings. The district court specifically asked Bogle if he understood that he was "giving up [his] right to appeal anything that has occurred in [his] case before [he] came to court" to enter his guilty plea. The district court also clarified that the scope of the appeal waiver "would include [the court's] opinion on the motion to suppress." In response, Bogle replied, "Yes, your Honor."

*Id.* at PageID 4312. Despite this express waiver, which he said he understood, Bogle appealed anyway.

After losing in the Sixth Circuit, Bogle took no further appeal to the Supreme Court, but instead filed his Motion to Vacate on April 5, 2024, the last day of the limitations period. See 28 U.S.C. § 2255(f)[1]. In his Amended § 2255 Motion, the presently operative pleading, he raises two claims for relief:

> **Ground One**: Counsel rendered ineffective assistance in advising me on the offer made by the Government prior to the "best case" conference.
>
> **Supporting Facts:** Prior to the November 13 2020 "best case-worst case" conference Counsel was full aware of the Government's plea offer proposal. Without instructions to do so she informed the

---

[1] § 2255 motions at the Dayton location of court are no longer automatically referred to a Magistrate Judge by General Order as they were before 2022, but in this case Judge Rice found exigent circumstances warranted the referral (ECF No. 738).

Government that I was not going to accept it.  Thereafter on November 12 2020 in a video conference with Counsel she failed to advise me of the strengths and weaknesses of the Government's case against me, the likely sentence I would face if I rejected the plea offer, and the merits of an F.R. Crim. P. 1 l(c)(l)(C) plea that capped my sentence exposure regardless of my Guidelines sentencing range.

**Ground Two:**  Counsel rendered ineffective assistance by abandoning me after the "best case" conference and letting the Government's offer lapse.

**Supporting Facts:**  After the "best case-worst case" conference Counsel was aware that I was interested in obtaining further advice from her in order to make a knowing voluntary and intelligent decision on accepting the Government's plea offer. While she knew that I was uninterested in a cooperation agreement she also knew that I was focused on the likelihood that the government had a strong case, and that the plea agreement it offered might provide sentencing benefit over going to trial or waiting for a later offer. Counsel had a basic obligation - especially given my inability to communicate because of being in detention and the COVID-19 pandemic - to communicate with me before the plea agreement offer was withdrawn or overtaken by events. Counsel's failure to speak to me by phone or video prevented my accepting the plea offer.

(Amended § 2255 Motion, ECF No. 799, PageID 4818-19).

# Analysis

The governing standard for ineffective assistance of counsel claims is found in *Strickland*

*v. Washington*, 466 U.S. 668 (1984):

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the

> Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

To prevail on an ineffective-assistance-of-counsel claim, a movant must establish that (1) counsel's performance was deficient and (2) the deficiency resulted in prejudice, meaning that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Shimel v. Warren*, 838 F.3d 685, 696 (6th Cir. 2016).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

> would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."  *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*,  466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).  The Supreme Court has held the Sixth Amendment right to effective assistance of counsel applies to the plea negotiation process. *Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012).

In this case every fact on which Bogle relies was known to him personally before he entered his guilty plea and agreed, under oath, that Attorney Bowling had provided effective assistance. That is, he knew on May 5, 2021, whatever facts he relies on to claim she had rejected the twelve to seventeen year plea offer without his authorization.  He also knew whatever facts he relies on

to claim Attorney Bowling "abandoned" him after the Best Case/ Worst Case hearing.   That being so, how does he explain his swearing, orally and in writing on May 5, 2021, that he was satisfied with her representation?   During the evidentiary hearing he claimed that he had been "overwhelmed" and was just "rolling with the punches" (Transcript, ECF No. 852, PageID 5504). Even Judge Rice had not responded to his many requests for information.  *Id.*

The Magistrate Judge finds that explanation unpersuasive.   Judge Rice is known for conducting thorough plea colloquies and that model was certainly applied in this case.  Any person facing serious prison time can be expected to feel at least somewhat "overwhelmed."  Bogle does not offer the standard excuse that his lawyer told him to lie which the Court often hears from those trying to avoid a plea bargain.  He should be held to his admissions in the plea colloquy lest those become meaningless formalities.

Turning to the elements of ineffective assistance of trial counsel, Bogle's evidence of deficient performance comes entirely from his own opinion that somehow Attorney Bowling should have communicated with him more[2].  Although on cross-examination of Attorney Bowling, Bogle's counsel created the impression that she should have contacted Bogle more frequently or communicated with him in writing, the premises of leading questions are not expert opinions.  To prove deficient performance, a habeas petitioner must show that counsel's performance fell below an objective standard of attorney conduct.  *Strickland* held "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  466 U.S. 689.  Any assessment of Attorney Bowling's visits

---

[2] Bogle presented evidence from a cousin, Sean Oliver, that he had called Attorney Bowling to get her to be more in contact with Bogle.  But Oliver was not the client, nor was he inside the protection of attorney-client privilege.

10

to Bogle must be weighed in light of the ongoing COVID-19 pandemic at the time of Bogle's pre-trial detention.

Even if "objective standards" would have required more in person or written communication, Bogle has still failed to show prejudice. In the end Bogle got what Attorney Bowling and AUSA Tabacchi understood all along he wanted: a plea agreement with a binding sentencing range under Fed. R. Crim P. 11(c)(1)(C) with the lower end of the range in single digits, with no points assessed for a leadership role. Amazingly, the United States even agreed to a credit point for early acceptance of responsibility when Bogle was still equivocating on the morning he was brought to court to plead.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends Bogle's Amended Motion to Vacate under 28 U.S.C. § 2255 be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Defendant be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

April 24, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.