**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

UNITED STATES OF AMERICA,

Plaintiff, : Case No. 3:19-cr-137
Civil Case No. 3:24-cv-00104

\- vs -

District Judge Michael J. Newman
Magistrate Judge Michael R. Merz

CRAWFORD P. BOGLE,

Defendant. :

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This proceeding under 28 U.S.C. § 2255 is before the Court on Defendant's Objections (ECF No. 874) to the undersigned's Report and Recommendations recommending dismissal (ECF No. 869). The United States has responded to the Objections (ECF No. 880).

District Judge Walter H. Rice recommitted the case to the undersigned for reconsideration in light of the Objections (ECF No. 875). Upon Judge Rice's retirement from active service, the case was reassigned to District Judge Michael J. Newman by Chief Judge Sarah D. Morrison (ECF No. 885).

The reassignment does not vacate the Recommittal Order, but may affect the consideration of prejudice. (See analysis infra) § 2255 provides that motions to vacate will be heard by the "court which imposed the sentence." Rule 4 of the Rules Governing § 2255 Proceedings further

provides that a motion to vacate shall be promptly forwarded to "the judge who conducted the trial," or in a case which ended with a guilty plea to the judge who took the plea and imposed sentence, in this case Judge Rice. The same Rule provides that if the trial judge is not available, the motion is to be assigned to another judge "under the court's assignment procedure." That is exactly what happened here. When Judge Rice retired from active service as of August 28, 2026, Chief Judge Sarah Morrison reassigned the case to Judge Newman, one of the two District Judges in active service at the Dayton location of court (ECF No. 885). The transfer does not vacate either the Order of Reference (ECF No. 738) or the Recommittal Order (ECF No. 875). Although in his discretion Judge Newman would be completely free to vacate either of those Orders, he has not done so. Thus the direction of the Recommittal Order to reconsider the case in light of the Objections guides this Supplemental Report.

**Positions of the Parties**

**Defendant's Objections**

Defendant pleads the following objections:

1. The Magistrate Judge improperly relied on Defendant's plea colloquy statements to bar his ineffective assistance of counsel claims

2. The Magistrate Judge's Report and Recommendations dismisses substantial evidence of deficient performance

3. The Report and Recommendations failed to properly analyze counsel's credibility

4. The Magistrate Judge's Report and Recommendation erroneously found no prejudice

5. The Report and Recommendations improperly resolved factual disputes against Defendant without adequate analysis

Objections, ECF No. 874, PageID 5671-81.

**The United States' Response**

The United States responded to each of these Objections point-by-point and at length

I. The Magistrate Judge did not improperly rely on the plea colloquy in finding Bogle's ineffective assistance of counsel claim meritless.

II. The Magistrate Judge did not dismiss substantial evidence of deficient performance.

III. The Magistrate Judge did not fail to properly analyze Ms. Bowling's credibility.

IV. The Magistrate Judge was correct in finding that Bogle failed to establish prejudice.

V. The Report and Recommendations properly resolved factual disputes in light of the evidence on the record.

Response, ECF No. 880, PageID 5688-98.

## Analysis

**The Credibility Issue**

Rather than attempting a point-by-point analysis of the Objections, the undersigned believes it would be most useful to the Court to concentrate on the decisive point of disagreement: the competing credibility of Defendant Bogle and his accused attorney, Kathryn Bowling.

The parties agree the governing standard for claims of ineffective assistance of trial counsel

is provided by *Strickland v. Washington,* 466 U.S. 668 (1984), where the Supreme Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

At the time of the best case/worst case hearing, the United States agreed to allow Bogle to plead guilty under a Rule 11(c)(1)(C) agreement which would have fixed the sentencing range at twelve to seventeen years. At the time Assistant United States Attorney Tabacchi estimated the likely sentencing range if Bogle were convicted on all charges would be an offense level of forty-two and a criminal history category of III, resulting in a Guideline Range of thirty years to life imprisonment. (Transcript, ECF No. 755, PageID 4484). The estimate turned out to be accurate: the Probation Department calculated a guideline range of 360 to 480 months (30-40 years)(PSI, ECF No. 603, PageID 3458).

Bogle asserts Attorney Bowling rejected that offer without his authorization. Attorney Bowling, on the other hand, testified Bogle rejected the offer off the record even before the hearing was concluded.

The undersigned believes Attorney Bowling rather than Defendant Bogle because her testimony is consistent with the course of proceedings after the best case/worst case hearing. As government counsel writes:

> In her testimony Ms. Bowling described ongoing discussions with Bogle in which he repeatedly stated that he wanted a sentence of 5 years and refused to accept her advice, given multiple times, that such a sentence was unlikely. "Oh my goodness, from early, early beginning discussions with him, he had in his mind that he was going to walk out with 60 months. Regardless of how I counseled him on the unlikeliness of that, that is what stuck in his mind. He was always stuck on the bottom of the range. That was - - that was in every discussion, and he was adamant about it."

Transcript, ECF No. 852, PageID 5399. Plea discussions continued from the time of the best case/worst case hearing on November 13, 2020, until the parties entered into the Plea Agreement on May 5, 2021, only five days before trial was set to begin. With the Plea Agreement, Bogle achieved what Attorney Bowling says he wanted all along: a binding plea agreement with a sentencing range with a five-year minimum. As noted in the Report, Bogle accepted the Plea Agreement and expressed no reservations about Attorney Bowling's representation.

In contrast to the consistency of Attorney Bowling's testimony with later facts, Bogle never told the Court that he would have accepted the 12-17 year sentencing range, although he wrote privately to Judge Rice about the case and his dissatisfaction with Attorney Bowling on other matters. (See ECF No. 559). He never said during the plea colloquy that he would have accepted the 12-17 year range. In fact, he never claimed he would have accepted it until he filed his § 2255 motion April 5, 2024, only about three weeks before the statute of limitations would have expired[1].

[1] The Sixth Circuit's mandate issued January 27, 2023. The one-year statute of limitations did not begin to run until ninety days later when his time to seek certiorari from the Supreme Court expired.

If Bogle was so exasperated with Attorney Bowling's representation, why did he fail to say so until almost three years after the plea colloquy when he expressed satisfaction with her representation? That fact, confirmed by the timeline of the docket, seriously undercuts Bogle's credibility.

While the competing credibility of Attorney Bowling and Defendant Bogle is the crucial issue, several points raised by the Objections require comment.

Bogle suggests the Report is based on the premise that a legally correct plea colloquy bars claims about prior ineffective assistance of trial counsel (Objections, ECF No. 874, PageID 5672, citing *Laffler v. Cooper,* 566 U.S. 156, 157 (2012)). In *Laffler* the Supreme Court rejected the proposition that conviction at a fair trial bars claims of ineffective assistance of trial counsel in plea bargaining. The Report does not rely on a contrary proposition. The question is not how thorough Judge Rice's plea colloquy was, but what Defendant did at its conclusion. After the colloquy Bogle said orally under oath in open court and in writing in the Plea Agreement that he was "completely satisfied with the representation of my attorney." (Plea Transcript, ECF No. 680, PageID 3917; Plea Agreement, ECF No. 565, PageID 3177).

Challenged during the evidentiary hearing to explain those words, Bogle testified he had been "overwhelmed" and was just "rolling with the punches" (Transcript, ECF No. 852, PageID 5504). Again, that claim is not credible. The Presentence Report in this case describes Bogle as thirty-five years old with a high school education who was personally involved in twenty of the overt acts charged to the conspiracy (ECF No. 603). At least eighteen others were involved in this conspiracy and large quantities of different controlled substances were being trafficked. He had a prior conviction in this in Case No. 3:13-cr-105 for which he was on supervised release at the time of his conviction here. Bogle's first drug conviction was at age nineteen and he had seven

more before this case. In each instance he was represented by counsel. Thus Bogle had extensive experience with the criminal justice system. He had received relatively light sentences for his prior offenses which may be why he apparently believed Judge Rice would sentence him at the lower end of the agreed range.

In any event, "rolling with the punches" does not excuse perjury. At the time he said under oath that he was satisfied with Attorney Bowling's representation, he knew all of the facts about her alleged deficient performance on which he now relies. Defendants, particularly thoroughly-cautioned sophisticated drug dealers, should be held to admissions made under oath less the plea colloquy become an empty formality.

Defendant complains that the Report is insufficiently thorough in analyzing Attorney Bowling's assertedly deficient performance. However, Bogle presents no authority for the proposition that an attorney must meet a particular number of times or communicate in writing a particular number of times to avoid deficient performance. However, much communication occurred, Attorney Bowling achieved what she understood Bogle wanted: an 11(c)(1)(C) plea agreement with a single-digit lower range. And whatever lack of in-person communication occurred must be read against the background of the COVID-19 pandemic.

Bogle also complains about the Magistrate Judge's prejudice analysis. Ultimately the agreed sentencing range was twelve to eighteen years and Judge Rice sentenced at the top of the range. If the twelve-to-seventeen offer had been accepted, he would of course have been limited to seventeen years. Therein, says Bogle, lies the prejudice. This argument assumes the truth of the claim it was Attorney Bowling who rejected the offer. For reasons given above, the Magistrate Judge does not believe that claim. Why Bogle believed Judge Rice would sentence at the low end of an agreed range is unknown to the undersigned, but Attorney Bowling's advice to Bogle that

that was very unlikely proved correct. As it is, Judge Rice accepted the Plea Agreement, as he was not bound to do, and imposed a sentence twelve years below the bottom of the calculated guideline range. If the case were still assigned to Judge Rice, he could directly assess the asserted prejudice, but that possibility is foreclosed by the transfer. If Judge Rice was determined for whatever reasons to impose the maximum allowed by the Plea Agreement, Bogle will indeed serve an additional year in prison. But that was caused by his own rejection of the twelve-to-seventeen offer.

**Conclusion**

Having review the case in light of Bogle's Objections, the Magistrate Judge respectfully adheres to his prior conclusion: the Amended Motion to Vacate should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Defendant be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

September 16, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond

to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #